## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 39945

| | |
|---|---|
| WADE FROGLEY, | ) |
| | ) Boise, August 2013 Term |
| Plaintiff-Appellant, | ) |
| | ) 2013 Opinion No. 124 |
| v. | ) |
| | ) Filed: November 27, 2013 |
| MERIDIAN JOINT SCHOOL DISTRICT | ) |
| NO. 2; IDAHO STATE BOARD OF | ) Stephen W. Kenyon, Clerk |
| EDUCATION, an Executive Department of | ) |
| the STATE OF IDAHO; LINDA CLARK, | ) |
| an individual; AARON MAYBON, an | ) |
| individual, | ) |
| | ) |
| Defendants-Respondents. | ) |

_____

Appeal from the district court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

The district court's order granting summary judgment is <u>reversed</u> and this case is <u>remanded</u> for further proceedings. Costs on appeal are awarded to Appellant.

Clark and Feeney, LLP, Lewiston, attorneys for Appellant. Jonathan D. Hally argued.

Anderson, Julian & Hull, LLP, Boise, attorneys for Respondent. Bret A. Walther argued.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

Plaintiff, Wade Frogley ("Frogley"), appeals the district court's grant of summary judgment in favor of Meridian Joint School District No. 2 ("Meridian School District"), Aaron Maybon, and Linda Clark (collectively "Respondents") on Frogley's complaint of retaliation in violation of Title VII of the Civil Rights Act and the Idaho Human Rights Act. Frogley also appeals the district court's grant of summary judgment in favor of Respondents on his claim of negligent infliction of emotional distress.

### II. FACTUAL AND PROCEDURAL BACKGROUND

1

On January 15, 2009, Frogley signed a one-year contract for the 2008–2009 school year as an Assistant Principal at Mountain View High School in the Meridian School District. Frogley began his position as Assistant Principal on July 31, 2008. Frogley's duties as assistant principal included attending various meetings; observing and evaluating teachers; supervising students in a variety of situations; disciplining students; and enforcing the student dress code.

Frogley alleges that within weeks of commencing his job at Mountain View High School, he was subject to continuous sexual harassment. Two weeks after beginning work, Frogley alleges that while attending an administrators meeting with Principal Aaron Maybon ("Maybon") and three other assistant principals, Maybon's assistant slid an envelope addressed to Frogley under the door. The envelope contained a fake wedding announcement claiming that Frogley was about to marry a "Cheap Two-Bit Tramp." Frogley's face was imposed on a picture of a groom and a scantily clad bride. Frogley asserts that Maybon admitted to having his secretary prepare and deliver the envelope.

During the first week of lunch meetings, because Frogley had more food than anyone else, Maybon commented that Frogley was having sex with the lunch servers in exchange for food. Frogley maintains that Maybon and the other administrators made comments of him exchanging sexual favors for food on a near daily basis. Despite Frogley's alleged objections to these comments, the comments did not stop.

Frogley maintains that throughout his employment comments were made with respect to how many women he was dating; the number of women with whom Frogley had sex; how many women with whom he was involved at the same time; whether his sexual preference was for women or men; and whether he was leaving school during lunch to have sex.

On October 23, 2008, Frogley had lunch with a visiting principal and was allegedly questioned by Maybon about whether he had sex with the visiting principal when Frogley returned from lunch. Also during October of 2008, Frogley alleges that administrators were referencing his office as a "nest of whores." Later that month, when Frogley did not volunteer to supervise a basketball game, school administrators allegedly commented that Frogley was probably going on a date, possibly with more than one woman, and Maybon allegedly suggested that Frogley might be homosexual. Frogley claims he objected to the statements.

On November 5, 2008, Frogley and Maybon had a meeting with each other. According to Respondents, Maybon met with Frogley at this meeting to discuss his poor job performance and

2

prepared a letter for Frogley's file memorializing instances of Frogley's poor performance during the week of October 23, 2008. Specifically, Assistant Principal Shana Hawkins noted that Frogley took a two and a half hour lunch on October 23, 2008, without telling anyone or ensuring that his responsibilities were covered. Frogley was also noted not to have been in attendance at a series of meetings regarding Student Individual Education Plans ("IEP") and Student Section 504. Also, Hawkins was asked to cover for Frogley at a meeting on November 4, 2008, after Frogley failed to attend the meeting or make arrangements for his absence. Respondents acknowledge that at the November 5, 2008, meeting with Maybon, Frogley raised the issue of the sexual comments with Maybon. Respondents maintain that this was the first time that Frogley raised these concerns with Maybon and that Maybon assured Frogley all comments would stop. Frogley asserts that he met with Maybon to make an emphatic demand that the sexual comments stop. According to Frogley, Maybon became very upset. Consequently, Frogley arranged a meeting with the superintendent of Meridian School District, Dr. Linda Clark, to discuss the situation.

The next day, following the meeting with Frogley, Maybon decided to examine Frogley's job performance. On November 7, 2008, Maybon asked counselor Tammy Schneider to provide him with a list of meetings that Frogley failed to attend between October 28, 2008, and November 4, 2008. Maybon also noted that Frogley had not conducted teacher evaluations for 18 of 26 teachers whom he supervised. After conducting this review, Maybon wrote his first letter of reprimand on November 11, 2008.[1] That same morning, Frogley allegedly failed to speak at a conference at which he was scheduled to speak without notifying anyone, however, Frogley maintains that he was at this conference and ready to speak but was never given the opportunity.

On November 12, 2008, Frogley was presented with a performance evaluation noting that Frogley's job performance was deficient in two areas and was unsatisfactory in four areas including leadership, interpersonal relations, and professional responsibilities. The evaluation also noted that Frogley failed to follow directives, was insubordinate, and damaged the trust between him and Maybon. That same day, Frogley and Maybon were scheduled for a 3:30 p.m.

---

[1] This letter identified five areas needing improvement: (1) absences from the building and failure to attend scheduled meetings; (2) failure to observe and prepare evaluations of teachers over whom Frogley had supervisory responsibility; (3) failure to satisfy professional responsibilities including attendance at meetings with Freshman teams, presence at parent meetings, and presence at Section 504 and IEP meetings; (4) poor communication with parents resulting in displeasure and agitation by the parents regarding Frogley's handling of situations; and (5) insubordination.

meeting. Frogley arrived at the meeting at 3:41 p.m. and failed to apologize or explain his tardiness, which Maybon considered insubordinate. The next day, Maybon prepared a second letter of reprimand documenting Frogley's alleged insubordination by failing to explain or apologize for his tardiness. That same day, Maybon placed Frogley on a Level II Improvement Plan. This improvement plan identified eleven areas for improvement and identified several strategies to assist Frogley in improving.

On November 14, 2008, Frogley allegedly failed to supervise students in the cafeteria, which was an expectation of his job, until directed to do so by Maybon. On November 20, 2008, Frogley acknowledged that he failed to conduct a required meeting with his freshman team, which was due in October of 2008. Also, on November 20, 2008, Maybon checked the school discipline recording system and found that Frogley entered only one disciplinary entry into the system even though Maybon was aware of more than one incident. These incidents resulted in a third letter of reprimand that was prepared on November 21, 2008.

On November 24, 2008, Frogley was allegedly thirty minutes late for his supervisory post in the cafeteria. Also, that same day, a student, C.D.[2], reported an instance of harassment. Two other students, M.J. and I.O., witnessed the incident and provided statements to the administration. Frogley denied ever harassing C.D. and maintains that he was never informed of or questioned about the allegations raised by C.D. Frogley maintains that he was watching C.D. and C.D.'s friends, pursuant to his duties, to see if they were hiding something. When Frogley made contact with C.D., he asked whether they were hiding anything, explained his position at the school, and noted that C.D. was defiant. Frogley maintains that nothing else happened.

Maybon noticed that Frogley spent a significant amount of time with a staff member, Melynda Mortensen. On February 4, 2009, Maybon requested Mortensen to prepare a statement

---

[2] The report dated November 24, 2008 read as follows:

> About 2 months ago me and my friends we[re] sitting by the greenhouse at lunch. Mr. Frogley, who at the time I did not know the name of, was standing just inside the doors watching us. I didn't like him and he freaked [*sic*] at my friends so I gestured for him to stop staring or leave. He came outside and knelt down really close to me. I was wearing a leash/tie made out of small chains and he grabbed it and pulled it towards him, and me with it. I tried to ignore him and he let go eventually, and I told him to get out of 'my bubble' because he was too close, and I didn't like being touched. He kind of grinned and grabbed my shoulder and massaged it. He said something to the affect [*sic*] of 'what's wrong, don't like being touched?" It almost sounded mocking to me. I jerked away and told him I didn't and he left. I told Mac about it but that I didn't know his name. Then last week he was in one of my classes observing and I was shaking until he left. I wasn't going to say anything since it had been so long, but I decided to since it still bothered me.

4

documenting multiple conversations she had with Frogley. On February 11, 2009, Frogley confronted Mortensen and aggressively questioned her in the hallway regarding whether she "ratted" him out for being in his office on February 4, 2009, instead of supervising a basketball game. Assistant Principal McInerney confronted Frogley about the incident, and Frogley filed a response to Mortensen's complaint. Maybon prepared a report on the incident, which was supplemented with video but not audio surveillance, and Maybon sent the report to Human Resources.

Following the report, Frogley was placed on administrative leave pending further investigation. He was transferred from paid administrative leave and reassigned to administrator of special projects at the District Service Center where he would have no duties with respect to student supervision or employee evaluation. Frogley never reported to his new position because he was placed on temporary disability. On May 12, 2009, Clark recommended the Board of Trustees not offer Frogley a new administrative contract for the 2009–2010 school year.

Frogley filed a Complaint and Demand for Jury Trial on May 3, 2010. A First Amended Complaint and Demand for Jury Trial was filed on October 26, 2010, naming as defendants Meridian School District, Idaho State Board of Education, Linda Clark, and Aaron Maybon.[3] Frogley filed a Notice of Voluntary Dismissal of the Idaho State Board of Education. Respondents filed a Motion for Summary Judgment on December 19, 2011. The district court issued its Memorandum Decision and Order Granting and Denying in Part Motion to Strike and Granting Summary Judgment. The district court granted summary judgment on all of Frogley's claims. Final Judgment was entered on March 29, 2012. Frogley filed his Notice of Appeal on May 9, 2011, and on appeal only challenges the district court's grant of summary judgment with respect to his retaliation and negligent infliction of emotional distress claims.

### III. ISSUES ON APPEAL

1. Whether the district court erred when it granted summary judgment to Respondents on Frogley's retaliation claim.

2. Whether the district court erred when it granted summary judgment to Respondents on Frogley's negligent infliction of emotional distress claim.

---

[3] Frogley alleged six causes of action: (1) sexual harassment in violation of Title VII of the Civil Rights Act and the Idaho Human Rights Act; (2) retaliation in violation of Title VII of the Civil Rights Act and the Idaho Human Rights Act; (3) breach of the implied covenant of good faith and fair dealing in employment contract; (4) defamation; (5) tortious interference with prospective economic advantage; and intentional and/or negligent infliction of emotional distress.)

## IV. STANDARD OF REVIEW

When reviewing on appeal the granting of a motion for summary judgment, we apply the same standard used by the trial court in ruling on the motion. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). We construe all disputed facts, and draw all reasonable inferences from the record, in favor of the non-moving party. *Id.* at 47, 44 P.3d at 1102. Summary judgment is appropriate only if the evidence in the record and any admissions show that there is no genuine issue of any material fact regarding the issues raised in the pleadings and that the moving party is entitled to judgment as a matter of law. Id.

*Sadid v. Idaho State Univ.*, 151 Idaho 932, 936, 265 P.3d 1144, 1148 (2011).

## V. ANALYSIS

### A. The district court erred when it granted summary judgment to Respondents on Frogley's retaliation claim.

The district court granted Respondents summary judgment on Frogley's retaliation claim on the basis that Respondents presented legitimate reasons for its adverse employment action against Frogley, which Frogley failed to rebut as pretext. The district court noted that the reasons advanced by the Meridian School District were that Frogley did not appropriately meet the requirements of supervision and evaluation of teachers; did not properly supervise students; allegedly harassed students; and failed to attend all necessary meetings. The district court found that the allegation of student harassment was sufficient in and of itself to support the adverse employment action. The district court held that Frogley failed to demonstrate that these reasons advanced by Respondents for the adverse employment action were a pretext because Frogley merely asserts that he had an excellent reputation. Such indirect evidence, the district court held, was not specific and substantial evidence of pretext.

Frogley argues that the district court erred when it granted summary judgment on his retaliation claim because he established a material fact as to whether Respondents' claims were pretext. Specifically, Frogley maintains that he provided direct evidence of pretext when Frogley testified that Maybon informed Frogley that *immediately* after Frogley met with Clark on November 11, 2008, to discuss his claims of sexual harassment, Clark called Maybon and directed him to initiate disciplinary action. Frogley also argues that he advanced indirect evidence of pretext because he established that some of the Respondents' claims against him were inaccurate; that he was singled out for disciplinary action while other similarly situated employees were not; and that he was never informed or questioned regarding the allegations of harassment.

6

Respondents argue that the district court's grant of summary judgment was proper because there is no direct evidence of pretext and the indirect evidence of pretext is not substantial. Respondents challenge Frogley's characterization of the Clark-Maybon conversation as direct evidence, and they assert that the conversation is indirect evidence because it requires an inference. They argue that this indirect evidence is insufficient because it is entirely speculative and rests on temporal proximity. Finally, Respondents maintain that the indirect evidence advanced by Frogley disputing the reasons advanced for the adverse employment action was insufficient because an employer is permitted to be wrong in its reasons for terminating an employee and a principal is given full control over who he or she wishes to teach in his or her school.

Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1), prohibits discrimination by employers on the basis of race, color, religion, sex, or national origin. That section further provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his [or her] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). Title VII further provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C § 2000e-2(a)(1).

The Idaho Human Rights Act, I.C. § 67-5901 *et seq.*, provides for the execution of the federal Civil Rights Act within the State of Idaho. I.C. § 67-5901(1). Idaho Code § 57-5911 provides that "[i]t shall be unlawful for a person or any business entity subject by this chapter to discriminate against any individual because he or she has opposed any practice made unlawful by this chapter . . . ." Idaho Code § 67-5909 provides that "[i]t shall be a prohibited act to discriminate against a person because of, or on a basis of, . . . sex . . . in any of the following subsections . . . (1) For an employer to fail or refuse to hire, to discharge, or to otherwise discriminate against an individual with respect to compensation or the terms, conditions or privileges of employment  . . . ." This Court has determined on multiple occasions that "the legislative intent reflected in I.C. § 67-5901 allows our state courts to look to federal law for guidance in the interpretation of the state provisions." *Patterson v. State Dept. of Health & Welfare*, 151 Idaho 310, 318, 256 P.3d 718, 726 (2011); *Mackay v. Four Rivers Packing Co.*,

145 Idaho 408, 413, 179 P.3d 1064, 1069 (2008); *Foster v. Shore Club Lodge, Inc.*, 127 Idaho 921, 926, 908 P.2d 1228, 1233 (1995).

Retaliation claims are analyzed under the familiar *McDonnell Douglas* framework. That framework provides that in a retaliation claim, a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *Patterson*, 151 Idaho at 318, 256 P.3d at 1069.

> Thereafter, the burden of production shifts to the employer to present a legitimate reason for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext . . . . Only then does the case proceed beyond the summary judgment stage.

*Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–02 (1973). A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

At oral argument, Respondents extensively argued that there could be no retaliation because there was no gender discrimination. Respondents made various attempts to argue there was no gender discrimination, including arguing that a man cannot be sexually discriminated against, that a man cannot sexually discriminate against another man, and that there is no indication it was Frogley's gender that motivated the sexual harassment. Indeed, Respondents' attorney at oral argument seemed to have asserted that such sexual harassment on the part of Maybon is a common occurrence at Mountain View High School, targets both genders, and thus is acceptable.

We need not, however, address these arguments in the present matter and decide whether there was indeed sexual discrimination on these facts. In the present matter, the district court concluded that Frogley demonstrated a good faith, reasonable belief that the challenged actions of his employer violated the law; that Frogley established an adverse employment action; and that Frogley demonstrated a causal link between the two elements thereby establishing a prima facie showing of retaliation. Respondents did not appeal those decisions by the district court. Neither did the Respondents at any time before oral argument on appeal assert or argue that there was no sexual discrimination. "When issues on appeal are not supported by positions of law, authority, or argument, they will not be considered." *State v. Zichko*, 129 Idaho 259, 263, 923

P.2d 966, 970 (1996) An assignment of error is deemed waived, and will not be discussed if there is no argument contained in the appellant's brief. *Arnold v. Splendid Bakery*, 88 Idaho 455, 466, 401 P.2d 271, 278 (1965) This Court holds that "a party waives an issue cited on appeal if either argument or authority is lacking." *Estes v. Barry*, 132 Idaho 82, 87, 967 P.2d 284, 289 (1998). Since Respondents neither appealed the district court's determination that Frogley established a prima facie showing of sexual discrimination, nor argued that point in their briefs or at any time prior to oral argument, this argument will not be considered.

Here, the district court concluded that Respondents presented legitimate reasons for their adverse employment action against Frogley, which Frogley failed to rebut as pretext. It is that determination of the district court alone that is challenged on appeal, and that determination that this Court will consider.

      1.      *There is no direct evidence of pretext.*

The Ninth Circuit has clarified the type of evidence that will enable a retaliation claim to proceed beyond the summary judgment stage. It held that "[w]hen the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (1998). Direct evidence of discriminatory animus has been recognized by several circuits as "evidence which, if believed, proves the fact without inference or presumption." *Davis v. Chevron*, 14 F.3d 1082, 1085 (5th Cir. 1994); *see also Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010) (holding that direct evidence of retaliation is lacking where the evidence "if believed, [ ] would not *require* the conclusion that Defendant unlawfully retaliated against Plaintiff." (emphasis in original)); *Godwin*, 150 F.3d at 1222 (finding direct evidence of sexual discrimination where employer said he "did not want to deal with another female after having dealt with [a female]"); *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1150 (9th Cir. 1997) (finding direct evidence of racial discrimination where employer referred to Mexican-American as a "dumb Mexican"); *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991) (finding direct evidence of sexual discrimination when employer made statements about women getting "nervous" and "easily upset"). It also "*requires* the conclusion that unlawful retaliation was a motivating factor in the employer's action. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013) (finding the statement "This is a good old boys network . . . They are doing this to you to get even . . . because you stood up for your rights" not direct evidence of

retaliation) (emphasis in original). Direct evidence expressly demonstrates that an employer "placed a substantial negative reliance on an illegitimate criterion in reaching an employment decision . . ." *Davis*, 14 F.3d at 1085.

In *Davis*, the Fifth Circuit Court of Appeals was presented with whether the plaintiff offered direct evidence of sexual discrimination when she presented evidence that one of the interviewers "stared at [her] from the neck down" and wrote notes from the interview to the effect that the plaintiff wore "pink glasses" and had "short brown hair." The same interviewer asked questions that the plaintiff alleged to have been sexist including questions about her ability to supervise men. Taken as a whole, the plaintiff argued these comments revealed the employer's sexism. The Fifth Circuit disagreed with the plaintiff's characterization of this evidence as direct evidence. It held that the notes did not demonstrate sexist animus without inference because the notes also mentioned the black shirt that the plaintiff, "G. Davis," wore. Also the notes were right under the candidate's name. The court held that the evidence merely demonstrated the interviewer's need to jog his memory. *Id.* Finally, the Fifth Circuit noted that while there was some direct evidence against one of the interviewers in the form of his questions, it was insufficient to prove pretext because the one interviewer was only one of seven persons involved in the decision and the evidence did not demonstrate animus. *Id.*

Frogley relies on *Chuang v. Univ. of California Davis, Bd. of Tr.*, 225 F.3d 115, 1127–29 (9th Cir. 2000), for the proposition that an employer's reaction to an employee's civil rights is direct evidence. In *Chuang*, two employees in the pharmacology department, both of Chinese origin, brought an action against the University of California Davis under Title VII alleging discrimination based on race and national origin. The Ninth Circuit found two instances of direct evidence. The first instance was when, in referencing another Asian employee, the employer stated that "'two chinks' in the pharmacology department were 'more than enough.'" *Id.* The second instance of direct evidence was when the chairman of the department said in a later meeting that the plaintiff should "pray to their Buddha for help." *Id.* at 1129. The Ninth Circuit found both of these comments to be direct evidence. *Id.*

In *Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th. Cir. 1997), the Eleventh Circuit dealt specifically with what constitutes direct evidence of retaliation in a Title VII action. The Eleventh Circuit noted that the "quintessential example of direct evidence in the age discrimination context would be 'a management memorandum saying, 'Fire Earley—he is too

old'"" *Id.* at 1190 (quoting *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (holding "Only the most blatant remarks, whose intent could be nothing other than to discriminate . . . constitute direct evidence of discrimination")). In *Merritt*, the plaintiff offered evidence that he was fired after his employer said "your deposition was the most damning to Dillard's case, and you no longer have a place here at Dillard Paper Company." *Id.* The Eleventh Circuit held this statement was direct evidence of retaliation. *Id.* Specifically, the Eleventh Circuit noted that there were two clauses to the employer's statement: (1) the plaintiff's deposition was damning, and (2) the plaintiff was terminated. These two clauses fit the quintessential example set forth in the *Earley* case. The court relied extensively on the coupling of the clause terminating the plaintiff with the clause indicating the plaintiff's participation in a protected activity. *Id.*

In the present matter, Frogley failed to present direct evidence of a motivation on the part of Respondents to retaliate for his complaint of sexual harassment. Though Frogley did testify that Maybon told him that immediately after his meeting with Clark, she informed him to begin disciplinary action, this alleged statement, which must be presumed true at the summary judgment stage, is not direct evidence of pretext. This conversation does not, without more, directly indicate that Frogley's protected activity was the motivating factor of Respondents' disciplinary action without further inference or presumption: it is possible it was a conversation about legitimate reasons for which Frogley should be disciplined. There is no indication that either Clark or Maybon made any comments related to his sexual harassment claim in Frogley's evaluations or in their conversation to begin disciplinary action against Frogley. Here, beyond Clark's statement to begin disciplinary action, there was no reference to Frogley's sexual harassment complaint. Even though Maybon told Frogley that if he challenged the disciplinary actions "a team of lawyers would make [Frogley's] life hell," this comment was made in the context of disciplinary actions and not when Frogley complained about sexual harassment.

Despite Frogley's reliance on *Chuang* for the proposition that an employer's reaction to a civil right is direct evidence, that case clearly found direct evidence of racial discrimination from the employer's several remarks on the plaintiff's race. Here, there were no direct comments of the employer with respect to Frogley's complaints of sexual harassment. Though Frogley offered evidence of Maybon saying that he was going to force Frogley from the school, none of Maybon's comments included an element of doing so because of his complaint about sexual

harassment. All of the evidence that is pointed to as being direct evidence by Frogley requires an inference to demonstrate that the discipline was motivated by Frogley's complaint of sexual harassment. This case is unlike *Merritt* because in this case Clark's statement to Maybon is only alleged as being one clause: begin disciplinary actions against Frogley. There is no evidence of any other clause or statement coupled with that clause indicating a protected activity. An inference is needed to draw the link between the adverse action and the protected activity. In this case, there is no such evidence. Therefore, Frogley failed to present any direct evidence of pretext.

2.      *There was sufficient indirect evidence of pretext.*

Recognizing that direct evidence is rare, the plaintiff "may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not their actual motives because they are inconsistent or otherwise not believable." *Godwin*, 150 F.3d at 1222. Such evidence must be substantial and specific. *Id.* Federal courts have found that indirect evidence is not substantial and specific where no evidence beyond what is produced to satisfy the plaintiff's prima facie case is produced. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (finding indirect evidence insufficient where no evidence beyond that produced for the prima facie case was presented); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995) (finding indirect evidence insufficient where no evidence beyond that produced for the prima facie case was presented). "[C]ourts only require an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (holding that the plaintiff's evidence of pretext was insufficient because the plaintiff failed to present evidence that the employer did not honestly believe its proffered reasons for its action).

Respondents rely on *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011), for the proposition that when indirect evidence is advanced by the plaintiff it must be non-speculative of specific facts. Respondents' reliance on *Cafasso* is misplaced. First, *Cafasso* does not involve a pretext analysis. Rather, *Cafasso* involves the burden on the plaintiff to establish a prima facie case of retaliation. *Cafasso*, 637 F.3d at 1060–61. Particularly at issue in *Cafasso* was whether the plaintiff was able to prove the third element of her prima facie case: a causal connection between the protected activity and the adverse employment action in a case utilizing

the "cat's paw"[4] theory of causation. It was in that context that the Ninth Circuit held that the plaintiff's beliefs that certain people "poisoned the water" without any specifics including names or admissible instances were statements that required "undue speculation" and failed to demonstrate that the adverse employment action was causally related to the plaintiff's protected activity. *Id.*

In the present case, the district court found that Frogley demonstrated his prima facie case of retaliation with the evidence that he complained of sexual harassment on November 5, 2011, and a string of reprimands began immediately on November 6, 2011.[5] Thus, all additional evidence advanced by Frogley challenging Respondents' legitimate reasons is evidence in addition to the prima facie case of retaliation. We hold that Frogley provided sufficient evidence beyond his prima facie case demonstrating that Respondents' claimed motives for their adverse employment action against Frogley were not believable.

First, Frogley raised evidence that rebuts the Respondents' claim that Frogley failed to complete teacher evaluations in a timely fashion. Frogley offered evidence that this reason was objectively wrong because district policy required evaluations to be completed at the end of the school year. Frogley also rebutted Respondents' claims that the evaluations were untimely, because Frogley had completed more evaluations than any of the other administrators, including Maybon, who reprimanded him. Surely, Maybon did not believe that failure to complete all teacher evaluations months before required was sufficient to warrant adverse employment action when he himself had not completed his own teacher evaluations at the time he reprimanded Frogley. Also, Frogley presented evidence that Maybon did not believe his evaluations to be untimely, because Frogley was told to hold off conducting his evaluations until a new electronic system was implemented.

Second, as to the reason given that Frogley was missing Section 504 and IEP meetings, Frogley raised evidence that he was not the only administrator who missed such meetings.

---

[4] The term "cat's-paw" refers to a situation in which a biased subordinate uses the formal decision-maker as a dupe in a deliberate scheme to affect a discriminatory employment action. *Llampallas v. Mini-Circuits, Lab, Inv.*, 163 F.3d 1236, 1249 (11th Cir. 1998). This doctrine derives its name from a La Fontaine fable in which "a monkey convinces an unwitting cat to pull chestnuts from a hot fire" *E.E.O.C. v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484 (10th Cir. 2006) (citing Fables of La Fontaine 344 (Walter Thornbury trans., Chartwell Books 1984)). As the cat scoops the chestnuts from the fire, the monkey eats the chestnuts leaving none for the cat. *Id.*

[5] The district court found that this fact was sufficient to establish a prima facie case of retaliation based on the case of *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002), which held that causation can be inferred from timing where an adverse employment action follows on the heels of protected activity.

Standing alone, this evidence is merely speculative in nature; Frogley advanced no evidence other than his bare assertion that none of the other administrators were corrected or otherwise disciplined for missing these meetings. However, Frogley offered specific evidence that he was not missing his supervisory duties by asserting that he was never specifically assigned to the cafeteria but that his duties required him to "watch over every area of campus." Frogley offered evidence demonstrating at the times Respondents claimed Frogley was not properly supervising the cafeteria, he was supervising other areas of the campus as required by his job duties.

Third, as to the reason given that Frogley was harassing students, Frogley came forward with specific details and evidence indicating that the district did not actually appear to have believed these allegations to be a basis for adverse action because at no time was Frogley ever contacted regarding the student complaints. Unlike all other alleged concerns the administration had with Frogley, they never presented him with these concerns, provided a letter of reprimand, or gave him an opportunity to respond. Respondents' apparent lack of concern for these claims of harassment casts doubt on the credibility of Respondents' claim that they were not renewing Frogley's contract on the basis of these allegations. Also, Frogley offered specific evidence that his duties included supervising and watching students for public displays of affection, possible drug activity, and to enforce the dress code. The district court erred when it considered this fact alone sufficient to justify Respondents' actions. Without a doubt, whenever an administrator is charged with enforcing a student dress code, a certain amount of conflict and discontent on the part of the student can be expected. The district's disregard of the complaint filed against Frogley until it came time to justify its adverse action against him could reasonably be inferred as indicating it does not believe the complaint was credible, of substance, or as motivation for their actions.

Finally, Frogley offered evidence that Maybon became agitated and angry when he complained of sexual harassment and that as he was leaving a special meeting with Clark to complain of sexual harassment, Clark called Maybon and told him to begin disciplining Frogley. This evidence, though not direct, is substantial indirect evidence that casts doubt on the reasons given for the adverse action taken against Frogley. Especially since a stream of disciplinary actions were taken in a matter of days after Frogley's complaints, in what Respondents admitted at oral argument was an attempt to create a paper trail to justify Frogley's termination. This coupled with the objective falsity of some of the reasons advanced by the Respondents, in

addition to specific evidence offered by Frogley of his job duties, and the behavior of the administration, cast doubt on the credibility of the reasons advanced by Respondents and create an issue of material fact to be resolved by the finder of fact.

Thus, the district court erred when it granted summary judgment to Respondents because there was an issue of material fact as to whether the reasons proffered by Respondents for their adverse action against Frogley was pretext for retaliation.

**B.      The district court erred when it dismissed Frogley's negligent infliction of emotional distress claim.**

The district court granted Respondents summary judgment on Frogley's negligent infliction of emotional distress claim. The district court granted summary judgment on this claim on the basis that the evidence produced was not sufficient to support a finding that a risk of serious harm to Frogley by Respondents' conduct was foreseeable when the conduct occurred. The district court relied on authority from the Idaho Court of Appeals that rejected the proposition that insulting and demeaning remarks in ordinary social interactions could inflict foreseeable serious emotional harm.

Frogley argues the district court erred in granting summary judgment to Respondents on his claim of negligent infliction of emotional distress because there was a genuine issue of material fact as to whether the conduct of Respondents could foreseeably create sufficient stress and anxiety to cause physical harm. Frogley points to the constant humiliation, personal attacks, and professional attacks he endured while employed at Mountain View High School, which resulted in his seeking treatment for depression and anxiety, and continued counseling. Additionally, Frogley argues that employers owe their employees a greater degree of respect.

Respondents argue that the district court properly granted it summary judgment on Frogley's claim of negligent infliction of emotional distress. Respondents argue that employers do not owe their employees a greater degree of respect because by so holding it would violate the employment at will doctrine.[6] Also, Respondents argue that the duty not to verbally abuse a person arises only when a plaintiff has increased sensitivity to verbal abuse, of which the defendant is aware. Respondents maintain that Frogley fails this standard and permitting him to

---

[6] Respondents' reliance on the doctrine of at will employment is a red herring because this is not a case of at will employment because Frogley was hired by Meridian School District pursuant to an employment contract, and alleged retaliation began while Frogley was under the employment contract.

pursue his negligent infliction of emotional distress claim would create a code of civility, which has been rejected by this Court.

The elements of negligent infliction of emotional distress are (1) a legal duty recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage. *Nation v. State Dept. of Corr.*, 144 Idaho 177, 189, 158 P.3d 953, 965 (2006); *see also Brooks v. Logan*, 127 Idaho 484, 489, 903 P.2d 73, 78 (1998); *Black Canyon Racquette Club, Inc. v. Idaho First Nat. Bank*, 119 Idaho 171, 175–77, 804 P.2d 900, 904–06 (1991); *Johnson v. McPhee*, 147 Idaho 455, 466, 210 P.3d 563, 574 (Ct. App. 2009). Additionally, there must be a physical manifestation of the plaintiff's emotional injury, which is designed to provide a degree of genuineness that claims of mental harm are not imagined. *Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 116 Idaho 326, 332, 775 P.2d 640, 646 (1989). Every person "has a duty to exercise ordinary care to prevent, unreasonable, foreseeable risks of harm to others." *Nation*, 144 Idaho at 190, 158 P.3d at 966 (internal quotations omitted). Generally, it is not foreseeable that insulting and demeaning remarks could inflict serious emotional harm. *Johnson*, 147 Idaho at 468, 210 P.3d at 576 (citing *Brown v. Fritz*, 108 Idaho 357, 362, 699 P.2d 1371, 1376 (1985)). This Court noted the following in *Brown*:

> The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Brown*, 108 Idaho at 362, 699 P.2d at 1376 (quoting Restatement (Second) of Torts § 46 (1965)). However, liability may arise where the conduct caused harm to a susceptible or frail individual and the defendant was aware of this condition. *Johnson*, 147 Idaho at 468, 210 P.3d at 576.

First, it is clear from decisions from both this Court and the Court of Appeals that it is not sufficiently foreseeable that verbal abuse could inflict serious emotional harm, and thus there can be no duty in tort absent an individual with a susceptibility of which the defendant is aware at the time of his or her conduct.

We hold that here Frogley has raised a sufficient question of fact to survive summary judgment on this claim. Frogley then raised evidence that he complained to Maybon of the alleged sexual harassment and asked that said harassment stop. Frogley offered additional evidence that various sexual remarks continued even after Respondents were made aware that Frogley found such conduct offensive. Frogley also offered evidence that on top of the continued

harassment he was being retaliated against for his complaints. It is true that it is expected that Frogley be able to endure a certain amount of inconsiderateness in ordinary social situations and at work. But despite Respondents' contention at oral argument that this conduct is normal conduct in any workplace and only merely inconsiderate, we disagree. Frogley alleged significant instances of harassment and demanded that such harassment stop but nonetheless was still harassed. He also offered evidence of retaliation on pretext. We therefore hold that there was a sufficient question of fact as to whether Respondents' conduct exceeded that degree of inconsiderate verbal remarks to which an ordinary person is expected to be hardened.

Thus, the district court erred in granting Frogley summary judgment on his negligent infliction of emotional distress claim.

## VI. CONCLUSION

The district court's grant of summary judgment is reversed. Neither party is entitled to attorney fees on appeal. Costs on appeal are awarded to Frogley as the prevailing party.

Chief Justice BURDICK, Justices EISMANN, J. JONES and Justice *pro tem* TROUT, CONCUR.