# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48939

STATE OF IDAHO,

Plaintiff-Respondent,

v.

PATRICK NIEVES AUGERLAVOIE,

Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Caldwell, May 2023 Term

Opinion Filed: 12/6/2023

Melanie Gagnepain, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. John T. Mitchell, District Judge.

The district court's judgment is affirmed.

Erik R. Lehtinen, Interim State Appellate Public Defender, attorney for Appellant. Brian Dickson argued.

Raúl R. Labrador, Idaho Attorney General, Boise, attorney for Respondent. Mark Olson argued.

_____

BEVAN, Chief Justice.

Patrick Nieves Augerlavoie appeals from the judgment of conviction entered against him after a jury found him guilty of felony leaving the scene of an injury accident, misdemeanor making a false 911 report, and being a persistent violator. During the second part of Augerlavoie's trial, at which the State presented evidence related to Augerlavoie's status as a persistent violator of the law, the trial judge directed the court clerk to certify an exhibit offered by the State. On appeal, Augerlavoie argues that this intervention from the trial court was improper and equates to the judge offering witness testimony under Idaho Rule of Evidence 605. Alternatively, Augerlavoie proposes that the trial judge's actions should be considered fundamental error. In either case, Augerlavoie asks this Court to vacate the sentencing enhancement entered against him. For the reasons stated below, we affirm.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 22, 2020, police officers responded to a two-vehicle car crash that resulted in injury. The driver, who was not at fault, suffered multiple injuries. The driver of the at-fault vehicle, which was registered to Augerlavoie, had fled the scene of the crash. While at the scene, emergency dispatchers received a phone call from Augerlavoie. Dispatchers informed the officers at the scene that Augerlavoie called 911 to report that his vehicle had been stolen from Sunset Bowling Alley. Witnesses to the accident later identified Augerlavoie as the driver of the vehicle that caused the crash. Witnesses also saw him flee on foot after the accident.

The State charged Augerlavoie with one felony count of leaving the scene of an injury accident, one misdemeanor count of providing false information to 911, and because Augerlavoie had three prior felony convictions, the State sought a sentencing enhancement for his being a persistent violator of the law. Augerlavoie was found guilty of the misdemeanor and felony charges. After that verdict, as the judge began to dismiss the jury, the prosecutor noted that the second part of the trial—related to the sentencing enhancement—had not yet occurred. Outside the presence of the jury, the parties agreed that the enhancement phase of the trial should proceed. Augerlavoie and the State waived opening statements and the State immediately began by seeking admission of four exhibits (Plaintiff's Exhibits 7A, 7B, 7C, and 7D) which were judgments of conviction related to Augerlavoie's prior felony convictions. Exhibit 7A related to case numbers F-2015-5995 and F-2015-11240; Exhibit 7B consisted of amended judgments for the same cases. Exhibit 7C related to case number F-2009-12479. Exhibit 7D was a copy of Augerlavoie's prior felony conviction in Contra Costa County, California.

Augerlavoie objected to the State's proffered Exhibit 7C, asserting that the judgment had not been properly certified. The judgment had a clerk's seal with the correct year and date but did not list the month. Augerlavoie argued that the document was improperly certified under Idaho Rule of Evidence 902.

The district court admitted State's Exhibits 7A and 7B without objection but agreed to "check to see if that deputy clerk is here and if that clerk can correct that deficiency" as to the missing month on Exhibit 7C. Soon after, the court explained:

> [THE COURT]: Mr. Banks will hand counsel for the plaintiff first and then counsel for the defense the 7C, and Madam Clerk was able to track down the deputy clerk that certified that originally, has made that correction, and you've -- are you offering that version of 7C, Mr. Mortensen?

[THE STATE]: Yes, Your Honor. With the corrected date on the seal I would move to re-admit 7C.

*(Exhibit No. Plaintiff's 7C offered)*

THE COURT: Okay. And then, Ms. Howe, if you'd just let me know if you have any objection to 7C as --

[AUGERLAVOIE'S COUNSEL]: Yes, Your Honor. I'm going to continue my objection just that there appears to be no updating as to the date of the correction made on this, so I still don't think it's met the standards for certification and under 902, and like I said, the reason I argue that . . . since it was a self-authenticating document . . . , and at this time it appears as though the month of January is the only thing added, and it appears to have a couple initials but nothing related to today's date or any prior or further certification, so I still object.

The State subsequently offered Exhibit 7D, without objection, before Augerlavoie clarified:

[AUGERLAVOIE'S COUNSEL]: And I'm sorry, just to clarify, the deputy clerk came and initialed and dated that [Exhibit 7C]? Is that correct, Your Honor?

THE COURT: Correct.

[AUGERLAVOIE'S COUNSEL]: Your Honor, I'm going to continue with my objection. Thank you.

THE COURT: Can I see the exhibit? Thank you, Harvey. All right. And the objection's overruled. Exhibit 7C is admitted.

(Emphasis added).

After admitting State's Exhibits 7A, 7B, 7C, and 7D, hearing argument from the State, and argument from Augerlavoie's counsel about reasonable doubt, the jury found that Augerlavoie had been convicted of two prior Idaho offenses but concluded that the State did not meet its burden to show that he had been convicted of the California offense. The two prior Idaho felony convictions, including the felony conviction represented by Exhibit 7C, were enough for the persistent violator enhancement under Idaho Code section 19-2514.

Before Augerlavoie was sentenced, he filed an Idaho Criminal Rule 25(b) motion and a supplemental motion to disqualify the judge for bias. In support, Augerlavoie's attorney argued that the trial judge "assumed the responsibilities of the prosecution to provide evidence for the prosecution of a criminal defendant at a jury trial[.]" The attorney also alleged that, during the trial, she "asked [the prosecutor] if the judge's actions were done at the prosecutor's request, to which the prosecutor responded, 'No'[.]" Following a hearing on Augerlavoie's motion, the

district court judge voluntarily disqualified himself under Idaho Criminal Rule 25(d), though he disputed that his actions warranted disqualification for cause.

A newly assigned district court judge sentenced Augerlavoie to a unified term of fifteen years, with five years fixed for the charge of leaving the scene of an injury accident, including the enhanced sentence. The court ordered the sentence to be served concurrently with the sentence Augerlavoie received for a separate case. The judge also sentenced Augerlavoie to a concurrent sentence of "time served" on the misdemeanor charge of giving false information to 911. Augerlavoie timely appealed.

## II. STANDARDS OF REVIEW

"Where the lower court's decision turns on the interpretation of a criminal rule, this Court exercises free review." *State v. Brown*, 170 Idaho 439, 511 P.3d 859, 865–66 (2022) (quoting *State v. Castro*, 145 Idaho 173, 175, 177 P.3d 387, 389 (2008)). This Court "exercises free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found." *State v. Hooper*, 145 Idaho 139, 142, 176 P.3d 911, 914 (2007) (citing *Doe v. State*, 133 Idaho 811, 813, 992 P.2d 1211, 1213 (Ct. App. 1999)).

"When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard." *State v. Jeske*, 164 Idaho 862, 867, 436 P.3d 683, 688 (2019) (citing *State v. Anderson*, 162 Idaho 610, 614, 402 P.3d 1063, 1067 (2017)). When reviewing a lower court's decision for an abuse of discretion, this Court must analyze "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## III. ANALYSIS

### A.      The district court did not err by directing the court clerk to correct the omission from the certification of Exhibit 7C.

Augerlavoie argues that the district court erred when it directed the creation of an admissible version of State's Exhibit 7C. The judge's intervention, according to Augerlavoie, was the functional equivalent of the judge assuming the role of a witness, just as much as the trial judge giving testimony in violation of Idaho Rule of Evidence 605. The State maintains that the district

court erred in directing the amendment of Exhibit 7C because the document was admissible as originally offered with no additional changes. Alternatively, the State argues that the district court's directing the court clerk to correct her omission on Exhibit 7C's certification did not constitute the judge's testimony under Rule 605. We will address the arguments in the order that Augerlavoie presented them.

"'[T]he interpretation of a court rule must always begin with the plain, ordinary meaning of the rule's language' but [this Court] may temper that meaning by the rule's purpose." *Brown*, 170 Idaho at 445, 511 P.3d at 865 (quoting *State v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38 42 (2017)). "Unlike statutory construction, '[this Court] will not interpret a rule in a way that would produce an absurd result.'" *Id*. at 445–46, 511 P.3d at 865–66 (quoting *Montgomery*, 163 Idaho at 44, 408 P.3d at 42). "'In keeping with the Idaho Criminal Rules' aim of providing for the just determination of every criminal proceeding[,]' [this Court] construe[s] the rules to secure simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay." *Id*. (quoting *Montgomery*, 163 Idaho at 44, 408 P.3d at 42).

This Court "interpret[s] identical rules 'in conformance with the interpretation placed upon the same rules by the federal courts.'" *Losee v. Deutsche Bank Nat'l Tr. Co.*, 165 Idaho 883, 888 n.1, 454 P.3d 525, 530 n.1 (2019) (quoting *State v. Stanfield*, 158 Idaho 327, 341 n.10, 347 P.3d 175, 189 n.10 (2015)). Under Idaho Rule of Evidence 605, "[t]he presiding judge may not testify as a witness in the trial. A party need not object to preserve the issue." I.R.E. 605. Idaho Rule of Evidence 605 is identical to Federal Rule of Evidence 605. Both rules of evidence prohibit the presiding judge from testifying as a witness at trial. *Compare* I.R.E. 605 *with* FED. R. EVID. 605. The advisory committee notes concerning Federal Rule of Evidence 605 explain that, while it is rare that a presiding judge may be called to testify in the trial over which he is presiding, it is not impossible and thus "the solution here presented is a broad rule of incompetency." FED. R. EVID. 605 *advisory committee's note*.

Both parties note on appeal that other jurisdictions have interpreted their version of Rule 605 broadly to encompass much under the rubric of sworn trial testimony. Since no Idaho case is directly on point, Augerlavoie advocates that we apply sister-state and federal jurisprudence in resolving this question. He first suggests that we apply Nebraska's approach. In *State v. Rodriguez*, the Nebraska Supreme Court held that a trial judge's conduct amounted to testimony from the bench when the judge overruled an objection on coaching and stated that he "had been watching

5

[the attorney] and [the attorney] had not coached [the] witness." 509 N.W.2d 1, 4 (1993). The Nebraska Supreme Court held that when the judge relayed that information, the judge assumed the role of a witness by presenting his own observations. *Id.* The main rule from this case is that Rule 605 applies to situations in which the trial judge interjects facts into the record from the bench, not just when he formally gives testimony under oath.

In addition to Nebraska, Augerlavoie also offers the Texas Criminal Appeals court's approach to Rule 605 challenges. That court stated the scope of review as follows: "The question should be whether the judge's statement of fact is essential to the exercise of some judicial function or is the functional equivalent of witness testimony." *Hammond v. State*, 799 S.W.2d 741, 746 (Tex. Crim. App. 1990) (quoting 27 Wright & Gold, *Federal Practice and Procedure: Federal Rules of Evidence* § 6063, 353 (1990)). The Texas court concluded that a judge having the court clerk call jurors during an evening recess in the trial to notify them that the defendant had absconded was not inappropriate, where the "trial court believed appellant personally had access to 'names and addresses of the jurors.'" *Id*. at 746. The court concluded it could not "say it was inappropriate for the trial judge, upon learning of appellant's escape, to be concerned for the safety of jurors, and to act promptly on that concern." *Id.* at 746–47. Under the circumstances, the court held "that in instructing the clerk to inform jurors of appellant's escape, the trial judge acted within his judicial capacity, and did not 'testify.'" *Id*. at 747.

Augerlavoie also points out that some federal courts have held that, rather than analyzing the issue directly under Rule 605, a judge's factual commentary or interjections from the bench are more appropriately addressed under the rules governing a judge's power to comment on the evidence and the inherent limitations on this power. *See*, *e.g.*, *United States v. Paiva*, 892 F.2d 148, 158–59 (1st Cir. 1989) ("A federal district court judge retains the common law power to explain, summarize and comment on the facts and evidence," but "[i]f a judge exceeds the limitations on his power to comment and to question, such action may constitute prejudicial error and require reversal."); *United States v. Valentine*, 70 Fed. Appx. 314, 324 (6th Cir. 2003) (quoting *Quercia v. United States*, 289 U.S. 466, 470 (1933) ("[A] judge may help the jury by 'explaining and commenting upon the evidence.' However, '[i]n commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it.'")). Indeed, the United States Supreme Court applied this standard in *Quercia* to hold that judicial commentary about how a defendant's wiping of his hands while testifying was

6

behavior classically indicative of lying was not proper judicial commentary on the evidence, but was a highly prejudicial interjection of the judge's own experience, "with all the weight that could be attached to it, in the scale against the accused." *Id*. at 471. The trial judge's conduct led to reversal of Mr. Quercia's conviction.

Augerlavoie also cites the approach taken by the Indiana Court of Appeals, as a way to "harmonize these approaches." *See Ferguson v. State*, 40 N.E.3d 954, 957 (Ind. Ct. App. 2015). There, the court noted that "[t]he reason for the broad rule [(605)] prohibiting a judge from testifying as a witness in a trial or a proceeding over which he or she is presiding is that taking the role of a witness is inconsistent with the judge's customary duty of impartiality." *Id.* But the court recognized that the question is much more nuanced when a judge does not step down from the bench, get sworn in and take the witness stand. In those circumstances, which the court referenced as the judge becoming a witness in "less overt ways," the court held that Rule 605 should be interpreted the same way as the federal standard cited immediately above. *Id*. (citing Robert Lowell Miller, Jr., 13 IND. PRACTICE, INDIANA EVIDENCE § 605.101 (3d ed.)). That is, resolution of the question whether the judge has become a witness in one of those "less overt ways" often involves analysis falling under judicial fair comment and not the evidentiary rule. Error is found where the judge's comments add to the evidence and are not merely summarizations of or fair comment on evidence already adduced at trial. *Id*. at 957–58. We find this approach to be sound, and we adopt it for application in nuanced cases like this one.

In *Ferguson*, the trial judge made the following statement after granting a defense motion to strike:

> Ladies and gentlemen, you know, you're to—you're to base your decision on the testimony that you hear and see today. And you're to make your decision as to the credibility of each witness, all right. The opinions of other people, *though heartfelt*, are not something you can consider, all right.

*Id*. at 956 (emphasis added). After the jury found the defendant guilty, he appealed, asserting that the judge's use of the words "though heartfelt" in referring to the opinions of others amounted to the judge offering testimony in violation of Indiana's Rule 605. The court rejected this argument and affirmed Ferguson's conviction, holding that the trial court's use of "though heartfelt" was not testimony and was not improper comment on an issue to be decided by the jury. The court pointed out that "[t]he trial court instructed the jury not to consider the opinions of others as to the

credibility of witnesses. 'Though heartfelt' emphasized the instruction by saying it was not relevant how 'heartfelt' the opinions may have been." *Id*. at 958.

We reach a similar result here. Augerlavoie maintains that both the federal and the state authorities support concluding that the trial judge's actions amounted to judicial intervention to amend the certification on Exhibit 7C, with the trial judge directing the creation of an admissible version of Exhibit 7C. We disagree. The district court's statements about the exhibit and having the clerk add a date clarification to the seal did not violate Rule 605. The court did not violate the Rule as we analyze whether the judge's comments added to the evidence. Merely summarizing or making fair judicial comment on evidence already adduced at trial does not violate the rule.

Nothing in the district court's statement offered extrajudicial facts to the jury, nor did the judge's direction suggest that if the trial judge had not intervened, the proposed version of Exhibit 7C would not have been admitted—as Augerlavoie suggests. Rather, the record reflects that the district court was prepared to have the State submit a new version of the exhibit. Augerlavoie failed to establish that the judge's actions presented the jury with information that the prosecution would otherwise have been unable to present on its own. At bottom, Exhibit 7C was a court record. Augerlavoie did not argue below that the record was inaccurate, but instead only argued that the certification was missing a month designation.

During oral argument before this Court, Augerlavoie tried to expand his argument to include reliance on Idaho Code section 9-1406 to illustrate the certification required for Exhibit 7C. There are two flaws with this argument. First, Augerlavoie focused his argument solely on Rule 605 below and in his opening brief. He did not argue that this statute applied until later; the first mention of Idaho Code section 9-1406 was in Augerlavoie's reply brief. As a result, "'[a]n assignment of error is deemed waived, and will not be discussed if there is no argument contained in the appellant's [opening] brief.'" *Gray v. Gray*, 171 Idaho 128, 518 P.3d 1185, 1201 (2022) (quoting *Frogley v. Meridian Joint Sch. Dist. No. 2*, 155 Idaho 558, 565, 314 P.3d 613, 620 (2013); *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) ("A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief.")).

Still, section 9-1406 governs affidavits or declarations given under oath, which are different than the exhibit at issue. The proper standard to view authentication of an exhibit is Idaho Rule of Evidence 902, which provides that some documents (including the judgment at issue) are

8

self-authenticating. Self-authenticated documents "require no extrinsic evidence of authenticity in order to be admitted." I.R.E. 902. State's Exhibit 7C was a copy of the November 2009 Kootenai County criminal judgment which, in its original form, was signed by the presiding district court judge, file-stamped, and signed by a deputy court clerk. The certified copy of the document contained a seal of The First Judicial District, Kootenai County, State of Idaho, with accompanying text certifying that the document was "a true copy of the original now on file or record in this office," and an accompanying clerk's signature with year and day of sealing, before any amendments were made to it.

Under Idaho Rule of Evidence 902(4), copies of official public records are self-authenticating if the copy is certified by someone authorized to make the certification or by a certificate that complies with Idaho Rule of Evidence 902(1). Nothing under Rule 902 requires that the exhibit comply with a separate Idaho Code provision. Indeed, the difference between Rule 902 and Idaho Code section 9-1406 is procedural, not substantive. When the distinction is one of procedure, the rule prevails. *See State v. Garner*, 161 Idaho 708, 711, 390 P.3d 434, 437 (2017) (quoting *State v. Johnson*, 145 Idaho 970, 974, 188 P.3d 912, 916 (2008) ("When there is a conflict between a statute and a criminal rule, this Court must determine whether the conflict is one of procedure or one of substance; if the conflict is procedural, the criminal rule will prevail.")).

Augerlavoie separately argues that by admitting the amended version of Exhibit 7C, the trial judge "was effectively vouching for the credibility of that exhibit." This argument is likewise misplaced. Although this Court has not considered whether a judge's intervention or statements may vouch for the credibility of evidence, we have considered several times whether a prosecutor's intervention or statement improperly vouches for the credibility of evidence. In that context, this Court has explained that "[v]ouching consists of placing the prestige of the government behind a witness through personal assurances of the witness' veracity, or suggesting that information not presented to the jury supports the witness's testimony." *State v. Lankford*, 162 Idaho 477, 497, 399 P.3d 804, 824 (2017) (quoting *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993)). In *State v. Alwin*, this Court clarified that "[v]ouching occurs if there is no evidence to support an assertion[.]" 164 Idaho 160, 170, 426 P.3d 1260, 1270 (2018).

That said, prosecutorial vouching does "not constitute a clear constitutional violation." *Id*. (quoting *Lankford*, 162 Idaho at 498, 399 P.3d at 825). As a result, when vouching occurs, "the improper statements will not rise to the level of fundamental error." *Id.* The United States Supreme

Court has also noted that "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11–12 (1985). These standards are equally applicable here. *See also Alwin*, 164 Idaho at 170, 426 P.3d at 1270 (concluding that the prosecutor stating, "[t]here's one person in here who has the motive to not tell the truth, and he's sitting right there[,]" was not vouching).

Considering these prosecutor-related cases by way of comparison, there was no vouching here. The district judge did not vouch for the exhibit's credibility under this standard. Augerlavoie points to nothing on appeal to suggest that the trial judge's direction to the court clerk to correct the certification on an exhibit materially affected the jury's ability to weigh the veracity of the evidence for itself. Indeed, the judge did not claim that the document was authentic or make any statement that put the court's weight behind the authenticity of the exhibit. Instead, following objection from the defense, the judge found that the exhibit was inadmissible without the date and, as explained above, responded:

> THE COURT: All right. Exhibit 7A and 7B are admitted without objection. 7C we will check to see if that deputy clerk is here and if that clerk can correct that deficiency. If not, then the State's going to have to submit a new 7C to the clerk of court.

Nothing in this statement placed an assurance behind the validity of the date on the exhibit or the authenticity of the exhibit. The district court did not give evidence as a witness and submitted nothing it observed or perceived or knew about into the record of the trial. Augerlavoie has failed to show that the trial judge violated I.R.E. 605; therefore, we conclude that the trial court did not err.

### B.     Augerlavoie did not show fundamental error.

When an error is not preserved for appeal, Idaho's appellate courts will only address that issue if it rises to the level of fundamental error. *See State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).  Augerlavoie proposes that even if the district court judge's conduct did not amount to offering testimony, or vouching for the exhibit, the district court judge's intervention with the exhibit constitutes fundamental error.

Augerlavoie argues that the trial judge violated his unwaived constitutional right to due process by depriving him of a fair trial by a jury before an impartial judge. Under the United States and Idaho Constitutions, a criminal defendant is entitled to a fair trial. U.S. CONST. amends. V,

10

XIV; IDAHO CONST. art. I, § 13. Indeed, "[a] necessary component of a fair trial is an impartial judge." *Weiss v. United States*, 510 U.S. 163, 178 (1994); *Pizzuto v. State*, 134 Idaho 793, 799, 10 P.3d 742, 748 (2000) ("the right to due process requires an impartial trial judge.").

> To establish fundamental error
>
> (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*State v. Hall*, 163 Idaho 744, 766, 419 P.3d 1042, 1064 (2018) (quoting *Perry*, 150 Idaho at 226, 245 P.3d at 978). "The burden is on the defendant to prove 'there is a reasonable possibility that the error affected the outcome of the trial.'" *Id.* (quoting *Perry*, 150 Idaho at 223, 245 P.3d at 975). When the error "is a constitutional violation found to constitute a structural defect, affecting the base structure of the trial to the point that a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, the appellate court shall automatically vacate and remand." *Perry*, 150 Idaho at 227–28, 245 P.3d at 979–80.

Augerlavoie asserts that fundamental error occurred here, satisfying all three prongs of the *Perry* standard. For purposes of argument, we agree with Augerlavoie that his counsel's failure to object to the trial judge's actions during the trial was not a tactical or strategic decision. Thus, he has satisfied *Perry's* second prong. That said, *Perry's* other two prongs are not satisfied here.

Augerlavoie directs this Court to a decision from the First Circuit to establish constitutional error. In *United States v. Raymundí-Hernández*, 984 F.3d 127, 155 (1st Cir. 2020),[1] the First Circuit held that a trial judge's intervention rose to the level of plain error when the judge showed an "anti-defense witness (or pro-cooperating witness) bias." The First Circuit explained that "[o]nce the judge signaled to the jury his disbelief of (or his indication to disregard the testimony of) the defense witnesses and, by extension, the defense theory, his comments bolstered the government's case and seriously prejudiced the defendant[']s. In doing so, the judge improperly altered the jurors' ability to evaluate competing testimony on their own." *Id.* at 157. The First Circuit

---

[1] As Augerlavoie concedes on appeal, the tests for plain error and fundamental error are not identical, but are substantially similar, and the federal courts employ the test for plain error.

11

concluded that, by usurping the jury's role, the trial judge infringed on the defendant's right to a fair trial. *Id*.

*Raymundí-Hernández* is not analogous to this case. The trial judge here facilitated an amendment to the court clerk's omission of the date on the certification of the exhibit. An allegation of prejudice against a judge must be "'of such nature and character as would render it improbable that the party could have a fair and impartial trial in the particular case pending.'" *State v. Gibbs*, 162 Idaho 782, 786, 405 P.3d 567, 571 (2017) (quoting *State v. Lankford*, 116 Idaho 860, 875, 781 P.2d 197, 212 (1989)). Nothing in the record evidences judicial bias or partiality. The judge's intervention was not "of such nature and character" that it would affect the fairness of Augerlavoie's trial. For this reason, we hold that neither the first nor third prongs of *Perry* have been satisfied.

Augerlavoie also contends that *Perry's* third prong has been satisfied because the judge's actions constituted a structural error in his trial. When the error "is a constitutional violation found to constitute a structural defect, affecting the base structure of the trial to the point that a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, the appellate court shall automatically vacate and remand." *Perry*, 150 Idaho at 227–28, 245 P.3d at 979–80. *See also State v. Vasquez*, 163 Idaho 557, 563, 416 P.3d 108, 114 (2018) (structural defects automatically satisfy the third prong of *Perry*).

While a trial before an openly biased judge may amount to a structural error, that principle has no application here. As we have noted, the record before us establishes no improper conduct by the district court judge that would amount to actual bias. Thus, no structural error occurred.

Although we conclude there was no structural error in Augerlavoie's trial, this Court is nonetheless concerned that the trial judge intervened as he did. We caution against such intervention. The role of the judge is to preside over the trial, ensure procedural fairness, and otherwise remain detached throughout the proceedings. A judge's effort to streamline the process, even if just to speed things up or to fix a scrivener's error, particularly when the error involves an exhibit, risks the appearance of partiality and may undermine the integrity of the trial process. That said, this case does not reach that far. To the contrary, the trial judge's direction to the court clerk did not "(1) rel[y] upon knowledge acquired outside [the] proceedings nor (2) display[ ] deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 556 (1994).

Consequently, while the intervention was properly questioned by Augerlavoie, it does not rise to the level of violating Augerlavoie's due process rights, nor does it reveal bias from the judge. Because Augerlavoie did not establish reversible error, the district court's judgment is affirmed.

## IV. Conclusion

The district court's judgment of conviction is affirmed.

JUSTICES BRODY, STEGNER, MOELLER and ZAHN CONCUR.