177 P.3d 387

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Benjamin CASTRO Jr., Defendant–Appellant.**

**No. 33452.**

Supreme Court of Idaho, Boise, January 2008 Term.

Jan. 25, 2008.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Eric Fredericksen argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Jessica Lorello argued.

HORTON, Justice.

Benjamin Castro Jr. appeals from the district court's memorandum decision and order, which continued a previous no contact order. Castro asserts that the district court erred in failing to either vacate or modify his no contact order as the order does not specify a date upon which it will expire. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August of 2003, Castro was on felony probation for possession of methamphetamine when he struck his pregnant wife Maritza in the stomach and hit her in the face and head until she lost consciousness. The attacks occurred in front of their one-year-old daughter. Castro and Maritza were separated at the time and living in different dwellings. Following the attacks, however, Castro confined Maritza to his parents' house, where he was also living. He forbade Maritza to venture outside and would cover her mouth if she screamed. After an informant reported the crime to Castro's probation officer, police responded to the residence. When Maritza came to the door, officers observed she bore two black eyes. She told the police she was pregnant and bleeding and that Castro would not let her go to the hospital. Police arrested Castro and took Maritza to the hospital. Castro was charged with felony domestic battery in the presence of a child, second degree kidnapping, and two counts of unlawful possession of a firearm.

At Castro's arraignment, the magistrate, pursuant to I.C. § 18–920, issued an order which prohibited Castro from contact with Maritza. Consistent with the version of I.C.R. 46.2 then in effect, the no contact order stated in relevant part, *"[t]his order can only be modified by a judge and will remain in effect until further order from the court."*

Pursuant to a plea agreement, Castro pled guilty to felony domestic battery in the presence of a child in violation of I.C. §§ 18–903 and 18–918 in exchange for the State agreeing to dismiss the remaining charges. The district court imposed an eight-year prison sentence, with two years fixed.

I.C.R. 46.2 was amended, effective July 1, 2004. The amendment removed the requirement for the inclusion of the language *"[t]his order can only be modified by a judge and will remain in effect until further order from the court,"* and added a new requirement that no contact orders must provide that *"the order will expire at 11:59 p.m. on a specific date."*

While Castro was serving his sentence, his second daughter was born to Maritza. Maritza made a *pro se* motion to have the no contact order vacated or modified so she could bring her daughters to visit their father in prison. A hearing on this motion was held on July 16, 2004. The district court stated that it would terminate the no contact order if Maritza could get a letter from her counselor saying that it was in the best interest of the children to visit their father in prison. At the hearing, the prosecutor informed the district court that the amendment to I.C.R. 46.2 required an expiration date on all no contact orders, noting that Castro's lacked an expiration date. Castro was not represented by counsel at this hearing and did not address the issue of lack of an expiration date. The district court stated that, unless the no contact order was terminated sooner, it would set a date for the expiration of the no contact order eighteen years in the future to assure that the daughters had reached the age of majority. Maritza apparently did not provide the requested letter, as no further action was taken on her motion.

On December 10, 2004, Castro filed a *pro se* motion to vacate and set aside the no contact order "to enable him and his wife to begin mending and healing the family unit of which they are the heads." Castro submitted letters and documents in support of his motion. Maritza submitted a letter expressing her support to "dismiss" or "remove" the no contact order so her daughters could get to know their father. A hearing on the motion was held before the district court on April 4, 2005. Castro was not present, as he was incarcerated. Rather, he was represented by counsel. Castro's attorney did not

raise or argue the issue of lack of an expiration date in the order.

The district court modified the no contact order to allow supervised visitation of Castro within the confines of the state penitentiary, subject to Idaho Department of Corrections rules. The written order of modification, which was prepared by Castro's attorney, did not provide a termination date. However, it did state that the modification was effective only while Castro remained incarcerated and that upon his release the original no contact order would apply. Castro does not appeal this order.

Castro was released on parole on August 19, 2005. On July 5, 2006, the State filed a motion for a no contact order, arguing that Maritza, who was divorcing Castro, wished to have no contact with him after his release. A hearing on the State's motion was held on July 17, 2006. At the hearing, the State raised the issue as to whether the district court must amend the original no contact order to include an end date so as to comply with the amendment to I.C.R. 46.2. Castro's attorney did not, however, raise or argue the issue of lack of an expiration date at this time. To the contrary, Castro's attorney challenged the district court's jurisdiction to modify the order.

On August 9, 2006, the district court issued a memorandum decision, holding that because the no contact order issued by the magistrate on August 20, 2003 was valid at the time that it was entered, it remained in effect *"until further order of court."* Castro appeals, asserting the district court erred by failing to vacate the no contact order or modify the order to provide a termination date.

## II. STANDARD OF REVIEW

■ Where the lower court's decision turns on the interpretation of a criminal rule, this Court exercises free review. *State v. Weber,* 140 Idaho 89, 91–92, 90 P.3d 314, 316–317 (2004) (reviewing the trial court's interpretation of I.C.R. 11(c)); *State v. Larios,* 129 Idaho 631, 633, 931 P.2d 625, 627 (1997) (reviewing the trial court's interpretation of I.C.R. 25(a)).

## III. ANALYSIS

The inherent power of this Court to make rules governing procedure in all the courts of Idaho, including the formulation of rules of criminal practice and procedure, has long been recognized. I.C. § 1–212 (1941); *State v. Knee,* 101 Idaho 484, 486, 616 P.2d 263, 265 (1980); *State v. Griffith,* 97 Idaho 52, 58, 539 P.2d 604, 610 (1975); *State v. Yoder,* 96 Idaho 651, 654, 534 P.2d 771, 774 (1975). Pursuant to this Court's inherent rulemaking power, I.C.R. 46.2 was promulgated in 2002 to govern the issuance of no contact orders by Idaho courts. When it was adopted, this rule required that all no contact orders provide that *"[t]he no contact order will remain in effect until further order of the court."*

However, within two years of its adoption, this Court became aware that I.C.R. 46.2 must be revised. Changes were made after a statewide study of the trial courts' handling of domestic violence cases. This study concluded that the most common complaint regarding no contact orders was their eternal existence stemming from the mandatory inclusion of the phrase *"[t]he no contact order will remain in effect until further order of the court."* Unless and until a party brought the matter back before the court, a no contact order remained in effect. This enshrined perpetuity resulted in confusion, false arrests, and lawsuits. The study noted that, in many cases, the parties subject to these orders get back together on their own accord despite the fact that a no contact order remains in legal effect. The study suggested that the mandatory inclusion of an end date in no contact orders could alleviate backlogging and confusion.

Taking into consideration the findings and recommendations of the statewide study, on April 22, 2004, this Court issued an order amending certain Idaho Criminal Rules, including I.C.R. 46.2. The amended version of this rule eliminated the requirement that no contact orders contain the statement *"[t]he no contact order will remain in effect until further order of the court,"* and added the requirement that no contact orders must specify *"[t]hat the order will expire at 11:59 p.m. on a specific date, or upon dismissal of*

*the case."* The amendment became effective July 1, 2004.

On appeal, Castro asserts that the district court should have applied the amended version of I.C.R. 46.2 when ruling on the State's 2006 motion, because it was the then current law, and either vacated or modified his no contact order because it did not include a specific end date.

■ The language of amended I.C.R. 46.2, requiring inclusion of a termination date in no contact orders, serves important public interests. In the future, in all cases which come before the trial courts of this state for hearing on a motion to modify or terminate a no contact order entered prior to July 1, 2004, we expect judges to provide a termination date, regardless of whether the motion to modify or terminate the no contact order is granted.

■ Our conclusion that trial courts must modify such no contact orders in the future, however, does not require that we reverse the decision of the district court. It was the State that raised this issue below. Castro objected to modification of the order. We have long held that "one may not successfully complain of errors one has consented to or acquiesced in." *State v. Caudill,* 109 Idaho 222, 226, 706 P.2d 456, 460 (1985). Therefore, we decline to address Castro's claim of error.

## IV. CONCLUSION

For the foregoing reason, the order of the district court is affirmed.

Chief Justice EISMANN, Justices BURDICK, J. JONES and W. JONES, concur.