# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46378

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, January 2020 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: April 14, 2020** |
| | ) | |
| **RILEY MARCUS LODGE,** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **Defendant-Appellant.** | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Deborah A. Bail, District Judge.

The order of the district court is affirmed.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant Riley Marcus Lodge. Erik Richard Lehtinen argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Jeffery D. Nye argued.

_____

STEGNER, Justice.

Riley Lodge appeals from the entry of a no contact order against him as a result of his being convicted of two counts of sexual battery of a minor child sixteen or seventeen years of age. After Lodge pleaded guilty to these two counts, the district court entered a no contact order which prohibited Lodge from having contact with the named victims and "[a]ll minor children." On appeal, Lodge contends that the district court abused its discretion by failing to provide an exception to the no contact order for two minor children who are also his biological children, and who were conceived as a result of the underlying sexual batteries. Lodge argues that the district court failed to exercise reason because there was no evidence that he posed a threat to his own children. The State responds that the district court did not abuse its discretion because the district court's decision was supported by the psychosexual evaluator's assessment that Lodge presented a high risk of reoffending. For the reasons set out in this opinion, we affirm the no contact order entered by the district court.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

A grand jury indicted Lodge on a total of six counts of sex crimes against five separate victims. He was indicted on four counts of sexual abuse of a child under the age of sixteen years old, two of which were purportedly committed against the same victim. The victims' ages ranged from nine to thirteen years old. Those counts included allegations that Lodge solicited the minors to remove their clothes and propositioned them for sexual intercourse. In addition to those counts, Lodge was indicted on two counts of sexual battery of a minor child sixteen or seventeen years old. The two victims of the sexual battery charges were both seventeen at the time that Lodge had sexual intercourse with them. Both of those girls became pregnant with Lodge's children.[1] These children, a boy and a girl, were born about a month apart.

Lodge pleaded guilty to the two counts of sexual battery of a minor child sixteen or seventeen years old. In exchange, the State dismissed the remaining sexual abuse charges. In the plea agreement, the State informed Lodge that it intended to request a no contact order for "all five victims as well as all minor children under the age of 18." Lodge reserved the right to argue for exceptions to the no contact order during the sentencing hearing.

Prior to the sentencing hearing, the district court ordered that Lodge submit to a psychosexual evaluation. Michael Johnston, Ph.D., conducted the psychosexual evaluation of Lodge. Johnston concluded that Lodge had a high risk of reoffending as compared to other sexual offenders. Further, Johnston concluded that Lodge "seemed most prone towards sexually offending against adolescent females but could potentially offend against prepubescent females. However, it should be noted that the psychological literature has demonstrated that with sexual offenders, there is often crossover and undetected victims." Additionally, Johnston stated that Lodge "appeared most likely to act in an opportunistic or low-level predatory way, engaging individuals who were readily available, easily manipulated, sexually curious, willing participants, or under the influence of substances."

Based on the findings in the psychosexual evaluation, Johnston made several recommendations to the district court. One was that Lodge should be "forbidden from unsupervised contact with minors until clinicians providing the sexual offender treatment

---

[1] While no one disputes that Lodge is the biological father of these two children, the record is unclear as to his legal status regarding those children. He is not on the birth certificate of one child. Further, during the preparation of the Pre-sentence Investigation Report, Idaho Child Support Enforcement indicated that while it was in the process of obtaining court orders for Lodge to pay child support for both children, there were no existing support obligations.

determine [Lodge] no longer poses a significant risk." Likewise, "before being given permission to have contact with minors, [Lodge] should select, and have approved by treatment providers, appropriate chaperones." Johnston made other similar recommendations that Lodge not be around children.

At the sentencing hearing on September 17, 2018, the State requested "a no-contact order with the five individuals who are listed in [the] police reports, as well as all minor children under 18." Lodge's counsel requested that the no contact order "allow [Lodge] to have contact with his children. There's [sic] notes in the material about Health and Welfare being involved in that particular process. There are some additional safeguards there that he will need to comply with."

Following the parties' arguments, the district court made several statements concerning Lodge's criminal history. The district court noted that while awaiting sentencing, Lodge contacted a sixteen-year-old girl dozens of times. Further, the district court referenced Lodge's prior sex crimes, including sexually assaulting his sister and a younger female cousin. The district court referenced some of Johnston's conclusions, including Lodge's high risk of reoffending. The district court made no specific finding regarding Lodge's request for an exception to the no contact order for his biological children.

The district court sentenced Lodge to the penitentiary for three years fixed followed by seventeen years indeterminate for each count, to run concurrently. As for the no contact order, the district court stated,

> I am going to order no contact with all minors. I have signed the no-contact order with the victims and identified persons of concern from other investigations because I don't see any reason for there to be contact, particularly with having -- I don't see any reason to have contact anyway.

On September 17, 2018, the district court entered an amended no contact order, prohibiting Lodge from having contact with any of the five victims and "[a]ll minor children under 18" until September 17, 2038, which included the children fathered by him as a result of these crimes. The judgment of conviction was entered on September 21, 2018. Lodge timely appealed.

## II. STANDARD OF REVIEW

The issuance of a no contact order is left to the broad discretion of the district court. I.C. § 18-920(1) ("A no contact order may be imposed by the court[.]"); *see also State v. Cobler*, 148 Idaho 769, 771, 229 P.3d 374, 376 (2010).

> When reviewing a lower court's decision for an abuse of discretion, this Court must analyze "whether the trial court: (1) correctly perceived the issue as one of

3

discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason."

*State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

### III. ANALYSIS

Despite defense counsel's request for an exception that would have permitted Lodge to have contact with the children he fathered as a result of his crimes, the district court entered a no contact order prohibiting Lodge from having contact with *all* minor children, without exception. On appeal, Lodge argues that the district court abused its discretion in issuing the no contact order without exception because there was no indication that Lodge posed any threat to his children.[2] The State responds, arguing that the district court properly rejected Lodge's request for an exception to the no contact order because Johnston's report supported the district court's decision.

Lodge has not challenged the other three prongs of the *Lunneborg* test. Accordingly, this analysis will focus on whether the district court "reached its decision by the exercise of reason." *Bodenbach*, 165 Idaho at 591, 448 P.3d at 1019 (quoting *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194).

Idaho Code section 18-920 provides, in relevant part, "[w]hen a person is charged with or convicted of an offense . . . for which a court finds that a no contact order is appropriate, an order forbidding contact with another person may be issued." I.C. § 18-920(1). Further, Idaho Criminal Rule 46.2 instructs courts regarding what information must be included in the no contact order.[3] I.C.R. 46.2.

There is minimal case law in Idaho regarding the issuance of a no contact order. Many of the cases interpreting Idaho Code section 18-920 involve a violation of a no contact order or a no contact order that did not comply with I.C.R. 46.2. *See, e.g.*, *Cobler*, 148 Idaho at 771, 229 P.3d

---

[2] Notably, Lodge waived any argument relating to his fundamental right to parent under the Fourteenth Amendment of the United States Constitution. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality) (recognizing that the interests of parents in the custody and control of their children is a fundamental right); *accord State v. Doe*, 144 Idaho 534, 536, 164 P.3d 814, 816 (2007). Consequently, this opinion does not address Lodge's fundamental rights.

[3] I.C.R. 46.2 also describes modification by a protected person. While Rule 46.2 does not describe a particular mechanism to allow a defendant to move to modify or terminate the no contact order, Idaho courts have previously recognized such motions. *See, e.g.*, *Cobler*, 148 Idaho at 771, 229 P.3d at 376; *State v. Hillbroom*, 158 Idaho 789, 792, 352 P.3d 999, 1002 (2015) (holding that the defendant's remedy was to seek a modification of the no contact order); *State v. Castro*, 145 Idaho 173, 175, 177 P.3d 387, 389 (2008).

at 376; *State v. Herren*, 157 Idaho 722, 725, 339 P.3d 1126, 1129 (2014). However, the grant of discretion to the district court regarding the issuance of no contact orders as part of a criminal case is broad. The statute only states that the no contact order may be made "forbidding contact with another person." I.C. § 18-920. While there is nothing in the statute which suggests a limitation on *who* may be protected by a no contact order, the crimes referenced in Idaho Code section 18-920 suggest that the no contact order should be to protect current and future victims of crimes. All of the crimes listed in Idaho Code section 18-920 involve crimes against another person. *See id.* For example, the crimes include assault, battery, domestic violence, harassment, and stalking. *See, e.g.*, I.C. §§ 18-901, 18-903, 18-918, 18-6710, 18-7905. Accordingly, no contact orders must be made to protect the current or future victims of these types of crimes.

Under the facts of this case, we hold that the district court did not abuse its discretion. There were several findings, both by the district court and in Johnston's report, that support a conclusion that Lodge could be a threat to his children. Johnston's report indicated that Lodge presented a high risk of reoffending. The district court noted that Lodge had previously sexually assaulted his younger sister when she was a young girl, and had admitted to sexually assaulting an even younger female cousin. Further, the district court noted that while Lodge was awaiting sentencing and incarcerated, he contacted a sixteen-year-old girl approximately fifty times. Additionally, while Johnston's report concluded that Lodge had primarily targeted adolescent females in the past, "the psychological literature has demonstrated that with sexual offenders, there is often crossover and undetected victims." There is nothing in Johnston's report to suggest Lodge's children are immune from his predatory proclivities. The district court's decision appears to conclude that Lodge posed a potential threat to his children. This conclusion is supported by the findings and recommendations in Johnston's report. Accordingly, the district court exercised reason in reaching its decision and did not abuse its discretion in failing to create an exception to the no contact order for Lodge's biological children.

Additionally, Lodge has not pointed to any evidence in the record establishing what, if any, parental rights he currently has concerning these children. In the absence of such proof, there was no reason for the sentencing court to treat the victims' children any differently from other children. Nevertheless, nothing in this decision would preclude Lodge from attempting to establish paternity and obtain visitation rights through a separate civil proceeding. If he were

successful, he could then seek to modify the terms of the no contact order in this case. However, any such modification would be left to the sound discretion of the sentencing judge.

## IV.  CONCLUSION

For the foregoing reasons, the district court's no contact order is affirmed.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER CONCUR.