## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47583

| | |
|---|---|
| STATE OF IDAHO,<br><br>        **Plaintiff-Respondent,**<br><br>v.<br><br>KENNETH FRANKLIN<br>THORNBRUGH,<br><br>        **Defendant-Appellant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Filed: February 9, 2021**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED**<br>**OPINION AND SHALL NOT**<br>**BE CITED AS AUTHORITY** |

Appeal from the District Court of the First Judicial District, State of Idaho, Boundary County. Hon. Barbara A. Buchanan, District Judge.

Judgment of conviction for assault and malicious injury to property and no-contact order, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; R. Jonathan Shirts, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Kenneth Franklin Thornbrugh appeals from his judgment of conviction for assault and malicious injury to property. Thornbrugh alleges the district court abused its discretion by entering a no-contact order that prohibits him from living in his home on property shared with his brother, the protected person. Because the district court did not abuse its discretion, the no-contact order is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Thornbrugh and his brother, Michael, lived on a piece of property owned by Michael. On that property and approximately 100 feet from Michael's house, Thornbrugh lived in a mobile home left to him by his father. One evening after eating dinner together, Thornbrugh threw a knife

1

at Michael. The knife missed Michael and stuck in the fireplace mantel approximately six to twelve inches away from Michael. As a result, the State charged Thornbrugh with aggravated assault, a felony, for throwing the knife at Michael and malicious injury to property, a misdemeanor, for damage done when Thornbrugh threw the knife and later kicked in a door. At the arraignment, the district court entered a no-contact order on behalf of Michael, ordering Thornbrugh not to contact or go within 300 feet of Michael or Michael's home. Because of the proximity of Thornbrugh's trailer to Michael's home, the order essentially prohibited Thornbrugh from living in his home on the property.

Pursuant to a plea agreement, Thornbrugh pleaded guilty to misdemeanor injury to property and a reduced charge of misdemeanor assault. When Thornbrugh entered his guilty plea, the district court amended the no-contact order to allow Thornbrugh to return to live at his home, as long as he accessed it through his separate driveway and did not have any contact with Michael or come within fifty feet of Michael's home. The district court also granted the State's request that Thornbrugh undergo a mental health evaluation.

Prior to the sentencing hearing, an officer responded to a call concerning malicious injury to property at Michael's address. When the officer arrived, he contacted Michael who stated that Thornburgh contacted him twice that day. The first contact was when Thornbrugh called Michael on the phone. The second contact occurred when Michael was driving his car and Thornbrugh walked in the roadway in front of Michael's car, causing Michael to stop. Michael stated that Thornbrugh then approached Michael and disclosed that he broke some security cameras on the property. Michael arrived home to find his security cameras damaged. The officer observed that several security cameras were hanging by their power cords, no longer attached to the exterior walls. Subsequently, the officer located and arrested Thornbrugh for violating the no-contact order and cited him for malicious injury to property for the damage to the security cameras.

At the sentencing hearing, Michael asked the district court to reinstate the original no-contact order to prohibit Thornbrugh from being on the shared property. The district court reinstated the no-contact order which, in part, barred Thornbrugh from going within 300 feet of Michael or Michael's home. Thornbrugh timely appeals.

2

## II.

## STANDARD OF REVIEW

The issuance of a no-contact order is left to the broad discretion of the district court. *State v. Lodge*, 166 Idaho 537, 461 P.3d 819, 821 (2020). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

On appeal, Thornbrugh alleges the district court abused its discretion by issuing a no-contact order entered at the time of sentencing which effectively prevents him from living in his home on Michael's property. Thornbrugh argues because this restriction undermines his efforts at rehabilitation, the district court did not reach its decision through an exercise of reason. In response, the State contends the district court did not abuse its discretion.

No-contact orders are made to protect the current or future victims of crimes like assault, battery, and domestic violence. *Lodge*, 166 Idaho at 540, 461 P.3d at 822. Consequently, a no-contact order may prohibit a defendant from knowingly going within a certain distance of the protected person, their property, or places they frequent like their residence, workplace, or school. As a result, a no-contact order may require the defendant to leave his residence, for example, if by continuing to live there he would violate the order because he would come into contact with the protected person. *State v. Elizarraraz*, 166 Idaho 642, 643, 462 P.3d 620, 621 (Ct. App. 2020) (contrary to no-contact order protecting defendant's wife, defendant moved back into marital home). Ultimately, the district court's discretion to issue no-contact orders as part of a criminal case is broad. *Lodge*, 166 Idaho at 540, 461 P.3d at 822.

Prior to issuing the no-contact order, the following facts were known to the district court. The case began after Thornbrugh threw a knife at Michael, missing him by an estimated six to twelve inches. Although initially the no-contact order prohibited Thornbrugh from returning to his home, the district court granted Thornbrugh's request to modify the no-contact order so he could return to his home. In a matter of weeks, Thornbrugh was arrested for violating the amended

3

no-contact order. Thornbrugh's mental health evaluation noted that Thornbrugh displayed a significant ongoing risk for substance abuse relapse, a pattern of reckless behavior and poor anger control, and an elevated risk for harm to others in association with his abuse of alcohol and illicit substances.

At the sentencing hearing, the State stressed the importance of the district court issuing a no-contact order that protects Michael. Michael himself requested that a more restrictive no-contact order be entered because of Thornbrugh's violation of the no-contact order. Further, Michael did not want Thornbrugh living on the property and stated that Thornbrugh's home was uninhabitable and without power, gas, or alternative means to heat the building. The district court inquired about the ownership of the property and the mobility of Thornbrugh's residence. Michael stated that he owns the property, while Thornbrugh stated that he owns his trailer.

After hearing this information, the district court issued a no-contact order which prohibited Thornbrugh from going within 300 feet of Michael or Michael's home. Because Thornbrugh's home is approximately 100 feet from Michael's home, the order effectively barred Thornbrugh from residing in his trailer at that location. The district court intentionally made this restriction, stating:

> You may not go on that property. I'm sure your family, if you are able to move that trailer and put it someplace else--but until they come in and tell me differently, absolutely no way. We had this case and then you've got another case pending. And you haven't yet been convicted but I looked at the probable cause, and when the police picked you up in town they said you were highly intoxicated again. You obviously aren't supposed to be drinking. You have a serious alcohol problem, and these kinds of things happen when you drink.

Thus, the district court determined that based on Thornbrugh's current and pending charges, problems with alcohol abuse, and propensity for committing offenses after consuming alcohol, it was important to have a no-contact order in place that prohibited Thornbrugh from being within 300 feet of Michael or Michael's home. These are considerations that reflect the district court's assessment of the likelihood of Thornbrugh's recidivism and Michael's risk of future harm, considerations that reflect the purpose of a no-contact order. Accordingly, the district court did not exercise unreasonable judgment by issuing the no-contact order.

4

## IV.

## CONCLUSION

The district court did not abuse its discretion by entering a no-contact order that prohibited Thornbrugh from going within 300 feet of Michael or Michael's home. Accordingly, the no-contact order is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.