IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 52262

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: April 30, 2026 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) |
| KOCHE ROLAND ALIO, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cynthia Yee-Wallace, District Judge.

Judgment of conviction and unified sentence of thirty years, with a minimum period of confinement of eight years, for rape, <u>affirmed</u>; order of no contact, <u>reversed and case remanded</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kendra L. Nagy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Judge

Koche Roland Alio appeals from his judgment of conviction and unified sentence of thirty years, with a minimum period of confinement of eight years, for rape. Alio also appeals from a no-contact order entered by the district court. We affirm Alio's judgment of conviction and sentence but reverse and remand with respect to the no-contact order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Alio's adult son called 911 and reported that Alio and his wife were going through a separation. The son reported that Alio had recently been served with a protection order (prohibiting him from entering the family home) but he was currently inside the home. When

1

officers arrived, they found Alio inside the home (in violation of the protection order) and arrested him. During the subsequent investigation, Alio's wife informed officers that Alio had raped her while she was unable to consent because she had taken Ambien. She further reported that similar incidents had occurred multiple times in recent months.

The State subsequently charged Alio with two counts of rape for the incidents described by his wife. I.C. § 18-6101. Pursuant to a plea agreement, Alio pled guilty to one count of rape and the State dismissed the second count. During the entry of his guilty plea, Alio admitted that he had intercourse with his wife without her consent while she was under the influence of Ambien.

Pursuant to the plea agreement, the State recommended the district court impose a unified twenty-year sentence, with a minimum period of confinement of five years; however, that recommendation was not binding on the district court. The district court sentenced Alio to a unified term of thirty years, with a minimum period of confinement of eight years.[1] The State also requested the district court impose a no-contact order for twenty years, prohibiting Alio from contacting his wife and five of their six children. The district court entered a no-contact order for thirty years, which included Alio's wife, four of their minor children, and one of their adult children. The no-contact order included no exceptions for either Alio's wife or his children. Alio appeals.

## II.

## STANDARD OF REVIEW

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Decisions related to a no-contact order are also reviewed for an abuse of discretion. *State v. Cobler*, 148 Idaho 769, 771, 229 P.3d 374, 376 (2009). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted

---

[1]     Despite ordering Alio be incarcerated "forthwith," the district court included a number of conditions in its judgment requiring him to comply with various terms set forth in the mental health and psychosexual evaluations he participated in prior to sentencing, including terms applicable when he is in "the community." During the pendency of this appeal, the district court amended the judgment to remove those terms, presumably because the inclusion of such terms was improper.

consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Alio argues that his sentence is excessive and that the district court abused its discretion in issuing a no-contact order that included preventing Alio from having contact with five of his children. The State responds that Alio has failed to show the district court abused its discretion with respect to either Alio's sentence or the no-contact order. We hold that Alio has failed to establish the district court abused its sentencing discretion, but Alio has established error with respect to the scope of the no-contact order.

**A.     Sentence Review**

Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). Our role is limited to determining whether reasonable minds could reach the same conclusion as the district court. *State v. Biggs*, 168 Idaho 112, 116, 480 P.3d 150, 154 (Ct. App. 2020). Applying these standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion.

3

**B.      No-Contact Order**

In conjunction with the criminal complaint filed in this case, the district court entered a no-contact order listing only Alio's spouse as a protected party. At sentencing, however, the State asked the district court to amend the no-contact order to include not only Alio's spouse but also five of their children. The State argued that the no-contact order should include the children because the charge to which Alio pled guilty happened "in the immediate presence of [Alio's] young daughter"; that Alio, when suicidal, told his wife and children "his blood would be on their hands"; and that Alio stated it was "their fault that he's in the position that he is in." Alio objected to preventing him from having contact with his children, telling the district court: "I deserve to see my kids, or at least talk to them, especially my oldest one." Counsel for Alio also argued that Alio is "very proud of his children," "enjoys being a father," and "wants to be the best father to his children."

The district court granted the State's request to amend the no-contact order to extend to five of Alio's children, including J.A., who was an adult at the time the order was entered; the no-contact order is for a period of thirty years with no exceptions. Although the children's exact ages are not included in the record on appeal, the victim impact statement provided by Alio's wife on September 3, 2024, stated that she and Alio have six children, ages 20, 18, 16, 12, 9, and 5. With respect to the bases for extending the no-contact order to include five of Alio's children, the district court stated:

> I am going to sign the no-contact order as proposed by the State. I think that there is--there is sufficient cause that has been shown by the State to extend that to [Alio's] minor children, given the fact that this crime is alleged to have occurred in front of his minor children and that he blamed his minor children for calling law enforcement in this case.
> If any of your minor children who will be subject to this protection order want to be released from the protection order, they will always have that right to ask to be released from that. And if they want to pursue contact with you, they can ask to have this no-contact order lifted at any time.

When Alio pointed out that one of his adult sons, J.A., was named in the no-contact order, the district court responded that, if Alio's adult son "wants to be removed, he can certainly petition the Court to be removed." Hours after Alio's sentencing, J.A. filed a request to be removed from the no-contact order. Later that same day, the amended no-contact order was entered, which included J.A.

4

The district court did not address J.A.'s request to be removed from the no-contact order until he filed a second motion on January 26, 2026, in which he stated: "The no-contact order was entered in error. I was over the age of 18 at the time the order was placed during sentencing, was not a victim in this case, and there is no safety concern or legal basis for restricting contact." That same day, Alio's wife also filed a motion to modify or dismiss the no-contact order, citing a need to "communicate for family" and to discuss finances, custody, separation papers, and a possible home sale. Alio's wife further indicated she was "fine with telephone, email," and noted she was "not sure what else is standard." Finally, Alio's wife stated she "preferred" "no negative interactions" and that communication "would be helpful in making new life changes to go forward." In her supporting affidavit, Alio's wife referenced an intent to relocate due to "safety concerns arising from a separate, extremely violent criminal matter" involving another individual, which required her to communicate with Alio to resolve "issues involving child-related decisions, finances, and housing."

The district court held a hearing on the motions to modify, after which it entered an amended no-contact order that excluded J.A. but still included Alio's wife and four minor children. The amended order also included exceptions for contact by "telephone, video, and in writing while [Alio] is incarcerated" and "in-person visitation while [Alio] is incarcerated." As with the original no-contact order, the amended order expires in 2054--thirty years after judgment was entered against Alio.[2]

Idaho Code Section 18-920(1) states that a no-contact order "may be imposed by the court" for certain delineated offenses or for "any other offense for which a court finds that a no[-]contact order is appropriate." In 2020, the Idaho Supreme Court noted that "there is minimal case law in Idaho regarding the issuance of a no[-]contact order." *State v. Lodge*, 166 Idaho 537, 540, 461 P.3d 819, 822 (2020). The same is still true. The limited case law that does exist primarily involves interpretation of I.C. § 18-920 or whether a no-contact order complies with the requirements of

---

[2]     Pursuant to I.R.E. 201, this Court takes judicial notice of the following documents: (1) J.A.'s request to modify or dismiss no-contact order, file-stamped January 26, 2026; (2) Alio's wife's request to modify or dismiss no-contact order, file-stamped January 26, 2026; (3) Alio's wife's declaration of protected party in support of motion to modify no-contact order, file-stamped February 10, 2026; and (4) amended no-contact order, file-stamped February 10, 2026.

5

I.C.R. 46.2. *Lodge*, 166 Idaho at 540, 461 P.3d at 822. However, in *Lodge*, the Supreme Court addressed whether I.C. § 18-920 limits who may be protected by a no-contact order and concluded that no-contact orders must be made to "protect the current or future victims" of the types of crimes referenced in I.C. § 18-920. *Lodge*, 166 Idaho at 540, 461 P.3d at 822. The Court held that,"under the facts of th[at] case," the district court did not abuse its discretion in concluding that the defendant "could be a threat to his children," who were conceived as a result of the sexual batteries he was convicted of in that case. *Id.* In reaching this conclusion, the Court relied on several findings by the district court and the psychosexual evaluator. These findings included the psychosexual evaluator's determination that Lodge presented a high risk to reoffend, had a prior sexual assault he committed against his younger sister when she was a young girl, admitted to sexually assaulting an even younger female cousin, and had contacted a sixteen-year-old girl approximately fifty times while he was incarcerated and awaiting sentencing. The Court also noted the absence of any information that Lodge's children would be "immune from his predatory proclivities." *Id.*

For its argument, the State primarily relies on *Lodge*, arguing its "reasoning is directly applicable here" because the psychosexual evaluator also "found that Alio presented a high risk of reoffending" and the possibility of "crossover and undetected victims." We disagree that *Lodge* compels the conclusion the State advocates. The defendant in *Lodge* sexually offended against minor children and the no-contact order included his biological minor children due to the absence of any information that his own children would be "immune from his predatory proclivities." *Id*. When read in context, the psychosexual evaluator's concern in *Lodge* that "the psychological literature has demonstrated that with sexual offenders, there is often crossover and undetected victims" was based on Lodge's history of "primarily target[ing] adolescent females." *Id.* It was the similarity between Lodge's biological children, the victims of the offenses he was convicted of, and his predatory history towards minors that justified the no-contact order in that case. No such similarity exists in Alio's case. The victim of Alio's sex offense was his wife; there was no evidence that his children were at risk of being victims of a sex offense committed by Alio. The record instead reflects that the "type of potential future victim" identified by the psychosexual evaluator was an adult female. The comparison to *Lodge* is unpersuasive and does not reflect the basis of the district court's articulated concern in this case.

6

The inclusion of five of Alio's children in the no-contact order was based on the district court's finding that "this crime is alleged to have occurred in front of his minor children and that he blamed his minor children for calling law enforcement in this case." To be clear, the record shows that the victim reported the offense occurred while "two of their daughters were sleeping in the same room" and that Alio was upset that his adult son called law enforcement. While troubling, it is unclear on what basis the district court concluded that Alio's *minor* children could be his future victims or what offense the district court believed Alio may commit against them. The statutory authorization for a no-contact order in a criminal case requires identification of an offense from which a current or future victim requires protection. *See State v. Thompson*, 173 Idaho 244, 249, 540 P.3d 341, 346 (2023) (concluding there must be substantial and competent evidence that a protected individual is a current or future victim of an offense); *Lodge*, 166 Idaho at 540, 461 P.3d at 822 (holding that the statute supports that no-contact orders should be aimed at protecting current and future victims of crimes). Bad character is not a sufficient basis to extend a criminal no-contact order to individuals beyond the named victim in a case. The Idaho Supreme Court's decision in *Thompson* illustrates this point.

In *Thompson*, the district court first entered a no-contact order to protect Thompson's ex-girlfriend and their shared child after Thompson was charged with domestic violence in the presence of a child. *Thompson*, 173 Idaho at 247, 540 P.3d at 344. The order was then amended to permit Thompson to contact his child. Later, the no-contact order was again amended to include the child for a period of eight years. *Id.* at 248, 540 P.3d at 345. On appeal, Thompson argued that the district court abused its discretion when it amended the no-contact order because there was no evidence that he posed a threat to his child. The Idaho Supreme Court reversed, noting that the arguments made at the hearing to amend the no-contact order to include Thompson's child focused on Thompson's conduct as to the victim. The Court further noted that there was no evidence that Thompson's continued contact with this child would negatively impact the child in any way. The Court also acknowledged that, while it might be a hardship for the victim to facilitate Thompson's contact with their child, it ultimately concluded that the victim's wishes alone did not justify

prohibiting all contact with their child, especially for such a lengthy period. *Id.* at 249, 540 P.3d at 346.[3]

To the extent the district court's concern in this case was related to domestic violence, that basis was not articulated, nor did the district court acknowledge that (at a minimum) this was not a concern with respect to J.A. who the district court included as a protected party even though J.A. was an adult who advised the district court that he did not think it was "necessary" to be protected from his father. Moreover, it is unclear how Alio's minor children could be future victims of domestic violence when the district court sentenced Alio to thirty years in prison, with a minimum term of incarceration of eight years. This means Alio is not parole eligible until 2032, at which time all but two of Alio's children will be adults. The no-contact order should reflect the district court's stated concern of protecting children while they are minors. While the thirty-year period of protection afforded to Alio's wife is justified, blanket application of this same timeframe to Alio's children is not.

We recognize that the district court advised Alio that, if any of his minor children "want[ed] to be released from the protection order" to "pursue contact" with Alio, they could "ask to have th[e] no-contact order lifted at any time."[4] This admonition, while consistent with I.C.R. 46.2(b), which authorizes a protected person to seek modification or termination of a no-contact order, ignores that the minor children did not request the no-contact order in the first instance and assumes the ability of a minor child to pursue this relief. Although Alio's wife pursued modification for herself and the minor children, which was granted, we still remand the case for consideration of the bases for the no-contact order as to the minor children and, assuming the no-contact order remains in place, the proper length of time for the no-contact order to extend to the minor children.

---

[3]     We note that the opinion in *Thompson* was fractured. Chief Justice Bevan and Justice Brody dissented. *Thompson*, 173 Idaho at 250-52, 540 P.3d at 347-49. Unless and until the Idaho Supreme Court provides further guidance on the scope of I.C. § 18-920's application to potential and future victims, we are constrained to apply the law as we understand it based on both *Lodge* and *Thompson*.

[4]     We further note that Alio also has the right to seek modification or termination of the no-contact order; it is not a right limited to his children.

The challenge to the protection order with respect to J.A. is moot in light of the amended order entered February 10, 2026, which no longer included J.A. as a protected party.

## IV.

## CONCLUSION

Alio has failed to show his sentence is excessive. Alio has shown error in the no-contact order issued by the district court. Accordingly, his judgment of conviction and sentence for rape is affirmed and the no-contact order is reversed and remanded for proceedings consistent with this opinion.

Chief Judge TRIBE and Judge HUSKEY, **CONCUR**.